Good morning, Your Honor. I'm Jamie Lefkowitz, and may it please the Court, I would like to reserve two minutes for rebuttal. Much like the case before us today, Your Honor— Try to speak into the microphone. Excuse me. Is this better? My voice being loud and broadcasted? Okay. Much like the case before this, this case also involves whether or not a conviction under California Penal Code Section 530.5, subsection D2, should have been construed categorically as a crime involving moral turpitude. We would argue emphatically, Your Honors, that this specific code section and the conduct falling under it is not categorically a CIMT. First and foremost, California Penal Code 530.5 is expressly lacking on its face the element of fraud and or the intent to commit any fraud. I did point out to the Court in the supplemental filing the case of Tijani v. Holder, which did come out of the Ninth Circuit in 2010. My voice is a bit shaky this morning. Although Tijani dealt in 532A1, which did expressly state that there was an intent element, this case, as the Court pointed out there in the dissent inciting people v. Haig-Dorn out of the California Court of Appeal in 2005, the California Courts are reluctant to read an intent to defraud into a statute that does not include it on its face. The statute there in question, which is this statute here today in question, criminalizes the use of personal identifying information belonging to another for any unlawful purpose. That being said, when there is no express intent, the California Courts are reluctant to read it into a statute. As the Court pointed out there, had they included an intent element or wanted to, they would have so done it. So if we don't agree with you and we say it is a categorical CMIT, then the IJA and the BIA were correct in applying the 10 years, right? You have to prevail on that point. Correct, and that is one of two issues that I was hoping to address before the Court today. Aside from the fact that the crime itself should not have been construed as a categorical crime involving moral turpitude, the most important reason for that is because what happened in this case under the Nicara application is that it subjected the respondent at the time, who is now the petitioner, to the heightened standard under 8 CFR 1240.66 subsection C. Under that heightened standard, respondent, again now petitioner, had to demonstrate 10 years continuous physical presence as well as 10 years good moral character from the date of the act or omission that made him inadmissible or removable in the first place. Even if this is a CIMT, your client is not home free by any stretch of the imagination, is he? That is correct. Because you've got like four criminal offenses and that he would have to, let's just, if it were a CIMT, then he still, there's a possibility of the modified categorical approach. Then there's also, he's got, he, if, for cancellation of removal, he still has to show good moral character, correct, and hardship, which that hasn't been reached yet, right? No. And he's got, his latest is a DUI, right? The latest is a DUI, which the conviction from the DUI resulted not even a year past the conviction for the identity theft under 530.5. Okay. Now, I looked at the asylum, you're appealing that too, right? Correct. That doesn't seem very strong because he basically just claimed poverty and let me think, I wrote a couple of things down here. Let's see. He hasn't shown he was persecuted in the past. He claims poverty and general violence, which our cases don't say that that constitutes persecution. He hasn't shown any protected ground or social group. And, I mean, basically our cases say poverty and danger from criminal elements don't rise to the level of intention of infliction of pain or show that he is more likely than not that he would be tortured or returned. That is correct, Your Honor, and that was the holding of the immigration judge in finding him ineligible for asylum. But the issue in that case... Yeah, but you didn't really develop anything else in the record for asylum, right? Correct. And the point that I'm trying to make in that regard is that what Respondent, now Petitioner, was or was not statutorily eligible for is the issue today before the court. I don't think that there was an issue of statutory eligibility for the asylum insofar as there was a bar to him obtaining that requirement. But we could say it's a CIMT. We could remand it back for other things, but we could also deny the asylum based on the record before us. I mean, it is before us. But the court does have the authority to do so. Again, what I would submit to the court is that the issue of the NACARA eligibility or ineligibility at this point is the issue that is in most need of resolve by this court today. Well, but I guess did I misstate your asylum application? No, you did not misstate your asylum application. Again, and to circle back around as far as the CIMT goes, we don't believe that this case requires remand for the purpose of the board determining under a modified categorical approach perhaps whether the crime involved moral turpitude or did not. We believe that based on simply the face of the statute alone, that categorically speaking, the full range of conduct under 530.5d2 does not meet the definition of a CIMT. But if it's divisible, then the modified categorical approach can apply, right? Correct. And that has to be determined at this point, right? Correct. And, of course, we are looking to the court for clarification in regards to whether to apply the categorical approach or find that a modified categorical approach applies. But it is our position nonetheless that categorically this is not a crime involving moral turpitude. The modified categorical approach would only apply if the statute was divisible. And, again, the any unlawful purpose prong is an indivisible portion of the statute. It's furthermore not divisible. Under Section D.2 of the statute, which Petitioner here was convicted of in 2008, which conduct is applied or how it should be applied we don't believe requires any clarification. We don't believe that there's a portion that may or may not. The statute seems to read very clearly that to be convicted, one has to, with knowledge of only personal identifying information and nothing more, transfer that information to somebody who is going to commit a violation of Subsection A. So were you asked to take this off the calendar kind of at the 11th hour, and here we are. Well, we were all ready. There is no resolution at this point, but there's ongoing discussions, or what's the status? Well, the status at this point, Your Honor, is that we are hopeful to at least engage in discussions given the changes in recent law. What, of course, we would not be able to decide was whether this was categorically a CIMT or what approach to use. But I do think that this circuit has come out, Tahani v. Holder, matter of Silla v. Truvino, there are cases that have come out that could have at least led us into a direction as far as discussions go as to what direction to take. And again, simply to narrow the issues we felt would have been advantageous to at least attempt to do that for this court and its decision today. And that was the purpose of requesting the continuance. Again, simply to see if, based on recent case law, we could narrow down the issues, if anything, for this court at some point. Well, just for your edification from the standpoint, if there's really nothing tangible at that point and you have three judges coming from different locations and we're ready to go to court, taking something off calendar is really not very... that's not efficient for the court unless there's something that... because we all come from different places and to have to reconvene, it makes more sense to hear oral argument and what people are saying. Of course, correct. That being said, Your Honor, again, we believe that California Penal Code Section 530.5, Subsection A and D2 expressly lack the degree of scienter that is required under what would be considered a crime involving moral turpitude. As Silva Trevino pointed out, a state or federal criminal statute pursuant to which an alien is convicted is applied to conduct as a CIMT that must be both reprehensible conduct and conduct with some degree of scienter, whether specific, deliberate, willful, or recklessness. And again, we believe emphatically that a reading of the statute as the California legislature has written it with no further discussion or delving into the specific intent. We believe that it is clear on its face that the crime does not involve moral turpitude. Again, what I don't want to do is take away from the petitioner's record. I am not saying that he's an upstanding person. I am certainly not making that argument to the court. However, whether his conduct amounts to base or vile such that it is categorically CIMT, we believe is not the case. That being said, if there are any further questions from the panel, I would like to reserve the rest of my time for rebuttal. Thank you. Thank you. Dr. Drafner, again, for the respondent. This case, it's important to note, is a petition for review of the denial of a motion to reconsider. So the standard there is whether the board abused its discretion in denying the motion to reconsider. Well, but it's still, if we think you're wrong on the CIMT, then that's an easy answer, correct? That is correct, but you don't actually need to reach the CIMT issue in the way that it's been framed today for this court. The board in its decision determined that this is a crime that is inherently base, vile, and depraved. But if we don't agree... Right, but petitioner made no argument in their motion to reconsider challenging that portion of the decision. And they also make no argument in their opening brief challenging that portion of the decision. Instead, their argument is focused on whether their client had the requisite scienter at the time of his conviction. They rely on Flores Figueroa. But what they're trying to do there is collaterally attack the conviction. The California courts have already decided that he willfully acted, he had actual knowledge that the personally identifying information of a specific person would be used to commit a violation of Section A. So that issue has already been decided by the California courts. This is not the appropriate forum to challenge that issue. And they've made no argument in their motion to reconsider or before this court arguing that the board's conclusion that this is inherently base, vile, and depraved is wrong. They've also made no argument either in their motion to reconsider before the board or in their brief before the court challenging one of the two good moral character determinations that the board made. The board determined that the alien failed to establish good moral character both because he had been convicted of a CIMT and because he failed to establish good moral character under the catch-all provision given the number and seriousness of his offense. Again, they make no argument at any time either in their motion to consider or before this court challenging the board's determination that he failed to establish good moral character under the catch-all provision. That alone is dispositive of the NACARA claim. Good moral character is independently dispositive. He's failed to challenge that, has failed to challenge the board's conclusion that it's inherently base, vile, and depraved. So this court doesn't need to reach the underlying issues because they're not properly before the court. They've not been exhausted and they're waived. As for the 28J letters that we received yesterday in reliance on Tijani and Aragon, the conversations with counsel that started on Friday afternoon were in reliance on what counsel described as intervening case law. At the time of our discussions, counsel mentioned Aragon. Well, Tijani's been around forever. Exactly. I mean, I was on that for, I think, about 10 years or something. It went on forever. Exactly. Tijani was decided in 2010. It was decided it was available to petitioners when this case was first before the board. It was available, and there is no petition for review from that decision. It was available when this case was before the board for reconsideration. They made no argument at any time in reliance on Tijani. Those arguments are not appropriate here now. However, as we noted in our follow-up 28J, Tijani cites Hagerdon. Hagerdon, again, is the case we discussed in the last argument where the California courts said that identity theft is an indisputable evil. That makes it inherently base, vile, depraved, and thus falls into the category of crime involving moral turpitude. As for Aragon, although that is an intervening decision, after having had the opportunity to review the case, it's simply inapplicable. First, Aragon discusses the requirements for an alien to establish seven years of continuous physical presence, seven years of good moral character, preceding the date of the application. That's not the issue here. The issue here is whether he's established ten years after the commission of an act or the assumption of an offense that is a CIMT. From your perspective, just humor me for a moment. What would have to happen that he could ever get any relief here? What would happen if he had? If it wasn't a CIMT, then what? Well, we... I know you're not conceding that. Don't keep arguing that. No, no. Let's say if it were not a CIMT, then you go from there. What would have to be all the next steps before he would have any possibility for relief? Yeah, if it were not a CIMT, he still fails at good moral character. He still fails... Okay, so if it weren't a CIMT, then what? And it goes back. Then what are the next steps? If it were not a CIMT and it... Then the ten years wouldn't be right, correct? Right. The ten years would not be right. It would be a seven-year evaluation. Correct. But that hasn't been determined on this record, and I don't know whether he can meet that or not. Well, you're correct, and the board would need to decide that. But if I might note, this case has been pending a very long time, and, in fact, in 2005... Oh, dear. Oh, in 2005, Petitioner, through current counsel, actually conceded that he doesn't have the seven years. August 2, 2005, Record Transcript, page 127. He came to the United States on October 5, 1998. He applied for NACARA on March 31, 2005, less than seven years later. So the board would need to make that determination in the first instance, but he doesn't even have the seven years continuous physical presence for purposes of NACARA if this were not a CIMT. And, again, he's not challenged the board's conclusion that he has failed to establish good moral character under the catch-all provision. And he's also... If this case were to go back, the board would need to decide whether he was eligible for relief as a matter of discretion. And it seems unlikely, given his lengthy criminal history, that the agency would decide. I'd also like to note... What about asylum? That's before us, is that correct? Yes. Well... I mean, he could... Arguably, we could say this is not a CIMT, but we could also deny asylum. Correct. He makes a perfunctory argument in his motion for reconsideration challenging asylum. So assuming that was sufficient to exhaust asylum, he's simply failed to meet his burden of proof on asylum. He's alleged no past persecution in Guatemala. He's certainly not alleged any well-founded fear of persecution on a protected ground. He's only alleging poverty. To the extent his asylum claim fails, he also fails to establish his eligibility for withholding and has not made any allegation that poverty constitutes torture, so also failed to establish his eligibility for CAT. If I might note one additional thing, I know that you keep asking me to assume, for purposes of argument, that this is not inherently base, vile, depraved. Again, an argument that is unexhausted in WAVE. I'd like to point out something from his own testimony at page 232 of the record. When asked about this conviction for stealing credit card information, he himself acknowledged, quote, it's very bad. No one would want someone to steal what they have. So he's even acknowledging himself that this is a bad thing that he's done, as we argued in the previous case, that a person's identity is something of value. So we would argue that he's simply not made arguments that this court has jurisdiction to reach regarding whether this is inherently base, vile, or depraved, never made that argument in his motion to reconsider, doesn't make it in his brief, also doesn't argue that this doesn't preclude him from establishing good moral character under the catch-all provision. Those two issues are alone dispositive, each independently dispositive. But if the court does reach the issue of whether this is categorically a CIMT, we would say that it is. It is inherently base, vile, depraved. He himself acknowledged that it is a very bad thing to steal something that belongs to someone else, and that the California courts... Well, because he acknowledges that he did something bad, that doesn't mean that he's morally depraved. And the California courts, too, have said that identity theft is indisputably evil. So we have a combination of things here working against this individual. Well, they said it's morally what? Morally, that this is a crime involving moral turpitude. It is morally turpitudinous, that it is indisputably evil, is what the California courts have said. Identity theft is indisputably evil. Well, when you talk about, you know, depravity, you know, morally depraved, I suppose you can have different views on that subject. But you could probably say that about almost any crime in this community. That's true. It's certainly possible because the standard goes on to say not only inherently base, vile, depraved, but contrary to the duties owed between persons or to society. And in the Tijani case, which petitioners cited in their 28J letter, the court discussed at length, in the context of credit card fraud, how damaging it is to society to lose something of value. It undermines our entire economy. What about the credit card companies that deceive the public out of billions of dollars? Are they morally depraved? If someone chooses to so prosecute them, that's for a court to decide. But identity theft is certainly a significant problem in society today, certainly a breach of the duties that we owe one another and to society to take someone's identity, to take someone's personally identifying information, to take someone's financial information. And we would ask that if there are no further questions, that you deny the petition for review in this case. Your Honours, I did want to point out in reference to Respondent Counsel's argument that petitioner stating that he stole something or used the term steal, I would argue that that is a term of art. If anything, he was simply admitting that he did something wrong,   to the public, I think that's a terrible thing. It requires no intent to commit fraud. Even his conduct demonstrated that he did not steal anything. These people that the information was obtained from, they willfully gave him their information. He worked at a restaurant and that is how he... Oh, they willfully gave them their credit cards and said, hey, why don't you copy these and sell them to someone else? No, of course not. I mean, it makes every... yeah. Thinking of the term steal, again, is a term of art. And I just wanted to point out that there was no deprivation on his part in such a way that included any malice. Again, I just wanted to point that out. Well, I think it's pretty clear that I don't think restaurants train people to write down credit cards and then sell them to other people. If you can make a little extra money, that's good. So acknowledged, of course, Your Honour. But again, I wanted to bring up that point simply because, again, having admitted that he did something that was very bad goes also to the good moral character aspect of his case, which the court, if the matter were to be remanded, would hopefully take as a positive in that regard. That being said, I did want to point out that... Why don't you respond to what the government said about the posture of this case? Well, that was what I was actually going to get into. Thank you. As far as the statutory eligibility for NACARA under subsection B with the seven years, as we had pointed out previously in the brief... No, that's not what I want to do to respond to. She said this is a motion to reconsider and you don't really properly have before the court the issue of the CIMT. Your Honour... That you haven't really put that that's not front and centre and that we don't have to decide that and also that you haven't, by the way that you briefed this, that it's not before the court under the catch-all section on moral character. Your Honour, what was specifically articulated in the brief to the court was that the crime should not have subjected respondent, now petitioner, to the heightened standard because it's not a crime of moral turpitude. Going into the specific issues, I would concede that why it's not a crime of moral turpitude was not discussed. However, what was discussed was that the heightened standard was wrongfully applied, i.e. that this should not have been considered a crime involving moral turpitude. In that regard, the posture of this case going forward, counsel pointed out that respondent, now petitioner, wouldn't even have seven years. However, I would point out to the court that under matter of Garcia, which was articulated, that an ACARA application has been construed prior as a continuing application. Notwithstanding that, petitioner has been in the United States since 1998. Even if we are going based upon a seven-year standard, his conviction in 2008 for the identity theft would notwithstanding still be outside of the requisite seven-year period, whether it's stopped via the filing of the application or stopped upon the court's adjudication of the application. Then why did you concede that he didn't have the seven years back in 2005 or whatever? Were you wrong? Would that be your argument, that you were wrong? At that stage, yes, Your Honor, and I believe that we did attempt to correct as much of that argument as we could via matter of Garcia explaining that it is a continuing application and that seven years was reached, although it may not have been reached on the day that the ACARA application was filed. But isn't that how it's measured? It has to be seven years on the date it's filed, right? The case law is not dispositive on that issue. Wait, wait, wait, wait. The case law, even though it's against you, is not dispositive? Well, what the case law recently under matter of Aragon has said is that the seven years, for purposes of good moral character, stops on the date of the filing of the application. All right, but we're talking about continuous residence. Correct, which that specific case didn't expressly deal with. Okay. Your Honor, with the 20 seconds I have left, I'd like to just... You're over, actually. You're going up. Oh, I am going up, you're right. Thank you. Thank you. I would call a Hardy versus...
judges: Bastian, Pregerson, Callahan